UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEONA STACK, *et al.*, | |
| Plaintiffs, | |
| v. | CASE NO. 3:19-CV-310-MGG |
| MENARD, INC., | |
| Defendant. | |

**OPINION AND ORDER**

The instant negligence action arose after Plaintiff Leona Stack ("Mrs. Stack") tripped and fell while shopping with Plaintiff James Stack ("Mr. Stack") at Defendant Menard, Inc.'s ("Menard's") store in Mishawaka Indiana. The fall caused Mrs. Stack to sustain potentially permanent personal injuries and to incur medical expenses that may also continue into the future. Plaintiffs' operative Amended Complaint alleges that Menard's was negligent by failing to maintain its premises and failing to warn Mrs. Stack of a dangerous or hazardous condition. Additionally, the Amended Complaint lodges a loss of consortium claim against Menard's on behalf of Mr. Stack. Menard's now seeks summary judgment on all of the Stacks' claims. Also pending before the Court is the Stacks' motion seeking relief from the costs of mediation, which occurred after Menard's filed the instant motion for summary judgment.

This Court retains subject matter jurisdiction in this action under 28 U.S.C. § 1332 because it is between the citizens of different States and the amount in controversy

exceeds $75,000. With consent of the parties pursuant 28 U.S.C. § 636(c)(1), the undersigned may enter a ruling in this matter. [DE 12].

## I.  RELEVANT BACKGROUND

The following facts are primarily not in dispute and are established by Plaintiffs' Notarized Affidavit [DE 48-1 at 1–2], their deposition testimony [DE 39-4, DE 39-5], and Mrs. Stack's responses to Menard's interrogatories [DE 39-3]. Any disputed facts are either not material or will be addressed in the substantive analysis below.

On November 7, 2018, the Stacks were shopping at the Mishawaka Menard's store. After about half an hour in the store, Mrs. Stack fell. At the time of the fall, the Stacks were about 20 feet apart—Mr. Stack in the bird feed aisle and Mrs. Stack beyond his line of sight in the Christmas display area. Prior to the fall, Mrs. Stack was walking in the main aisle towards the seasonal section of the store when a candy cane door decoration caught her eye. With nothing obstructing her view of the candy cane in one of the seasonal aisles, Mrs. Stack approached the decoration without any attention to the floor. Mrs. Stack did not look at the floor where she was walking or ahead of her. Instead, Mrs. Stack focused solely on the candy cane decoration.

As a result, Mrs. Stack did not notice any defect, buckle, or wear on the surface of the floor where she walked. She did not notice whether the floor was in poor repair or required maintenance. She did not notice the color or the composition of the floor or any differences between the floor in the main aisle and the seasonal aisle. Similarly, she did not notice a transition between the main aisle and the seasonal aisle. She simply did not observe the floor at all.

2

However, as she was walking from the main aisle towards the seasonal aisle, Mrs. Stack felt her right foot get caught on something or slip, which caused her to trip or fall forward. When she fell, Mrs. Stack landed on her right side facing the display. While shopping separately with no knowledge of the fall, Mr. Stack heard Mrs. Stack call his name in a distressed tone. He rushed to the seasonal aisle and found Mrs. Stack being assisted by another shopper. At that time, Mrs. Stack told him that "she never saw what she tripped over because she was in the process of reaching for the display item which she was interested in purchasing." [DE 48-1 at 1]. Even while being assisted and wheeled away from the fall site in a wheelchair, Mrs. Stack did not observe any defect in the floor or see what caused her fall. Mr. Stack, on the other hand, observed a slight buckle or bulge in the recessed vinyl plank flooring while waiting in the vicinity of Mrs. Stack's fall for the wheelchair to arrive.

The Stacks then declined Menard's offer of an ambulance. Mr. Stack took Mrs. Stack to the nearby hospital where she was admitted for a two-night stay after being diagnosed with two fractures of her pelvis and a fractured right elbow. Before leaving the store, Menard's provided the Stacks with a claim number and contact information for Monika Walker, the claims adjuster for Menard's third-party insurance claims administrator. Mr. Stack reported Mrs. Stack's trip and fall to Ms. Walker within 24 hours of the fall.

The day after Mrs. Stack's fall, Mr. Stack and his son returned to the store and took several photographs in the area of the fall, including several of the floor. They also

observed a warning pylon in the aisle adjacent to where Mrs. Stack fell—a warning pylon that Mr. Stack had not observed the day before.

## II. MENARD'S MOTION FOR SUMMARY JUDGMENT [DE 39]

### A. Menard's Motion to Strike Plaintiffs' Surreply [DE 52]

Menard's filed its Motion for Summary Judgment on July 2, 2020. Consistent with N.D. Ind. L.R. 56-1(b)(1), the Stacks filed their response to Menard's Motion for Summary Judgment on July 28, 2020. [DE 48]. Under the same Local Rule, Menard's timely filed a reply brief on August 10, 2020, making the Motion for Summary Judgment ripe for the Court's consideration. [DE 49]. Without the court's permission or any other legal authority, however, the Stacks filed a Surreply on August 18, 2020. [DE 50]. In response, Menard's filed its Motion to Strike Plaintiffs' Surreply on September 1, 2020. Menard's Motion to Strike is well taken.

Surreplies are not contemplated in the Local Rules. N.D. Ind. L.R. 56-1; *cf.* N.D. Ind. L.R. 7-1. Courts may, however, allow a party to file a sur-reply if it "raises or responds to some new issue or development in the law." *Merrill Lynch Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, Cause No. 2:09-cv-158, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009). "Even if a party raises new issues in its reply, the opposing party is not permitted to submit a surreply absent leave of the court." *Risner v. City of Crown Point*, No. 2:08 CV 100, 2010 WL 3782210, at *4 (N.D. Ind. Sep. 21, 2010) (citing *Cleveland v. Porca*, 38 F.3d 289, 297 (7th Cir. 1994)). Despite the Stacks arguments to the contrary, Menard's did not raise new issues or evidence in its reply brief. As such, no good cause exists for the Stacks to file a surreply, especially without leave of court. Moreover, the

Stacks' surreply presents no new evidence for the Court's consideration and consequently could not change the outcome on Menard's motion for summary judgment. Therefore, Menard's motion to strike the Stacks' surreply should be granted.

### B. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Yet to overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322–23; *Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### C. Mrs. Stack's Negligence Claim (Count I)

In Count I of the Amended Complaint, Mrs. Stack alleges that Menard's was negligent by failing to maintain its premises and/or warn her of the hazardous rise in the flooring between the main aisle and the seasonal aisle with a transition strip or some other warning. Mrs. Stack then alleges that she was injured and incurred medical expenses as well as pain and suffering, all of which could continue into the future, as a direct and proximate result of Menard's negligence. [DE 27 at 1–2, ¶¶ 2–3].

In cases where subject matter jurisdiction arises from the diversity of the parties' citizenship as it does here, state law governs the substance of any claims. *Integrated Genomics, Inc. v. Gerngross*, 636 F.3d 853, 861 (7th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Thus, Indiana law governs Mrs. Stack's negligence claim. In Indiana, the tort of negligence "has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). A plaintiff bears the burden of proving all three elements of negligence and negligence will not be

inferred from the fact of the accident. *Midwest Com. Banking Co. v. Livings*, 608 N.E.2d 1010, 1012 (Ind. Ct. App. 1993).

Confronted with Defendant's motion for summary judgment, Mrs. Stack must now "put up" evidence establishing a genuine dispute of material fact as to at least one of the elements of her negligence claim in order to avoid summary judgment and proceed to trial. *See Celotex*, 477 U.S. at 322–23; *Peretz*, 662 F.3d at 480; *see also Goodman*, 621 F.3d at 654; *Hammel*, 407 F.3d at 859. Mrs. Stack has not presented sufficient evidence to establish a genuine dispute of material fact on the element of causation.

In Indiana, a person asserting a premises liability claim, as a business invitee, must present "specific facts that demonstrate the existence of a negligent condition that caused [the] fall and, therefore [her] injuries." *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 459 (Ind. Ct. App. 2000).

> An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendants' conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

*Daub v. Daub,* 629 N.E.2d 873, 877 (Ind. Ct. App. 1994). A plaintiff cannot satisfy this burden through speculation or conjecture as to the proximate cause of her injuries. *Hayden*, 731 N.E.2d at 459. If the plaintiff does not satisfy this burden, the defendant business owner is entitled to judgment as a matter of law. *Id.*

To show causation here, the Stacks rely upon their Notarized Affidavit dated July 27, 2020; photographs of the scene taken by Mr. Stack and his son the day after

7

Mrs. Stack's fall; two letters by Ms. Walker, Menard's claims administrator, in November 2018; a letter by professional engineer N. Richard Hicks dated April 23, 2019; excerpts from both of their deposition transcripts; and Menard's answers to their interrogatories. As discussed below, none of this evidence provides the specific facts necessary to create a genuine dispute of material fact as to the condition of the Menard's seasonal aisle, particularly in light of her own undisputed testimony that she does not know what caused her fall.

### 1. Eyewitness Testimony

The only eyewitness to the conditions at the site of her fall was Mrs. Stack herself. Mr. Stack admits he was not with Mrs. Stack when she approached the seasonal aisle, when she stepped into the seasonal aisle, or when she fell. While he understandably arrived at her side very quickly after the fall, he could not observe the conditions in the aisle relative to the flooring or anything else as she fell because he was not there. Thus, any observation by Mr. Stack as to the conditions in the seasonal aisle, even his observation of a buckle in the flooring, is irrelevant to the question of whether a negligent condition existed in the seasonal aisle when Mrs. Stack fell. As a result, Mrs. Stack's repeated deposition testimony that she did not observe the floor at all before, during, or after her fall is the only available eyewitness evidence relevant to determining the conditions that caused her fall. And her deposition testimony reveals nothing as to the cause of her fall. In fact, Mrs. Stack expressly testified that she did not know what caused her fall.

Despite the Stacks' argument to the contrary, the original transcripts of their June 4, 2020, depositions, as used by Menard's as the source of Mrs. Stack's testimony that she did not observe the flooring in the seasonal aisle, are admissible evidence. The Stacks argue that the deposition transcripts were attached to Menard's motion for summary judgment before they signed and verified or validated them. While Menard's filed its motion for summary judgment before the time allowed under Fed. R. Civ. P. 30(e) for the Stack to review, alter, and sign the deposition transcripts had expired, the original transcripts were never invalidated. In fact, the original transcript is always maintained even when a deponent alters it to reflect intended meaning so that the trier of fact—either the judge or the jury—can assess the credibility and integrity of the alteration. *See, e.g.*, *Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*, No. 1:02-cv-1014-LJM-VSS, 2006 WL 2644935, at *2 (S.D. Ind. Sept. 14, 2006) (citing *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000)). Thus, Menard's did not err by citing to the original, unsigned transcripts of the Stacks' depositions. Moreover, the errata sheets that the Stacks produced did not offer any corrections related to Mrs. Stack's testimony that she observed nothing about the floor in the seasonal aisle around the time of her fall. Thus, there is no substantive reason to question the reliability of the original transcripts.

Beyond their deposition testimony, the Stacks aver in their Notarized Affidavit that the conditions of the flooring in the seasonal aisle caused Mrs. Stack's fall. Specifically, the Affidavit states:

> **the cause of Leona Stack's trip-fall injuries was determined to be the unprotected edge of recessed overlayment of 1/8"–1/4" vinyl plank material (which the "buckle" was, or became a part of) installed as a display item in a Christmas Holiday aisle, which was at a right angle to a main aisle of the Menard's Mishawaka Store, on Nov. 7, 2018.**

[DE 48-1 at 1 (emphasis in original)]. Yet nothing in the record reflects their personal knowledge of the conditions in the seasonal aisle when she fell. In fact, the Stacks concede in the same Affidavit that "it was never determined that the 'buckle' was a cause of the trip fall incident—or, if the 'buckle' was caused by Leona's right foot coming into contact with the recessed vinyl plank material." [*Id.*]. Moreover, this inference that the unprotected edge of the vinyl plank flooring caused her Mrs. Stack's fall contradicts her deposition testimony. More specifically, the inference of causation in the Affidavit is inconsistent with Mrs. Stack's own uncertainty of what caused her fall evidenced by her deposition testimony where she knew that her right foot caught on something before she tripped and fell [DE 39-4 at 5–6; 8; 24] but could not identify what that "something" was.

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Snyder v. Livingston*, No. 1:11-CV-77, 2012 WL 1493863, at *1 (N.D. Ind. Apr. 27, 2012) (citations and quotation omitted). Unsupported conclusory allegations, legal argument, unsupported self-serving statements, "inferences or opinions not 'grounded in observation or other first-had experience,'" speculation or conjecture, and "statements or conclusions that contradict

10

prior deposition or other sworn testimony, without . . . resolv[ing] the disparity" are not properly included in an affidavit and should be disregarded. *Snyder*, 2012 WL 1493863, at *1. The Stacks' Notarized Affidavit includes inferences and conclusions about causation for which there are no supporting facts in the record and directly contradict Mrs. Stack's deposition testimony as to her personal knowledge of the cause of her fall. Thus, the inferences constitute mere speculation or conjecture that must be disregarded. *See id.* Even if the inferences about causation in the Affidavit could be considered, their speculative, unsupported nature makes them substantively irrelevant to the question of causation in this negligence case. *See Hayden*, 731 N.E.2d at 458–59; *see also Kincade v. MAC Corp.*, 773 N.E.2d 909, 911–12 (Ind. Ct. App. 2002); *Midwest Com. Banking Co.*, 608 N.E.2d at 1012.

### 2. Photographs

The photographs Mrs. Stack relies upon cannot be considered evidence of causation either. After all, the Stacks admit that the photographs were taken the day after Mrs. Stack's fall and the record includes nothing to account for any changes to the flooring as the result of Mrs. Stack's fall or in the approximately 24 hours between the time of her fall and the photographs.

### 3. Claims Administrator Letters

Within 24 hours of Mrs. Stack's fall, Mr. Stack discussed the incident with Monika Walker the insurance claim adjuster who handled Menard's claim on behalf of its third-party claims administrator. Later in November 2018, after completing her investigation of the incident, Ms. Walker sent separate short letters to Mrs. Stack and to

her former attorney declining to pay anything related to the fall. Without any recitation of the facts or rationale, Ms. Walker indicated in both letters that she "found negligence on both parties." [DE 48-1 at 23–24]. She further stated that Mrs. Stack was barred from recovery because of Indiana's comparative negligence standards. [*Id.*]. The Stacks cite to Ms. Walker's letters as evidence that Menard's was negligent. However, Ms. Walker's letters are inadmissible hearsay that must be disregarded here.

Hearsay consists of an out-of-court statement offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). As a result, the purpose for which a party offers a particular out-of-court statement will often be determinative of whether it constitutes hearsay. *United States v. Linwood*, 142 F.3d 418, 424 (7th Cir. 1998). A party may not rely upon inadmissible hearsay in an attempt to defeat summary judgment. *MMG Fin. Corp. v. Midwest Amusement Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). Hearsay evidence is inadmissible on summary judgment to the same extent as it would be at trial. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

The substantive information included in Ms. Walker's letters is limited to her conclusion that Mrs. Stack will not be compensated for her injuries by Menard's and her conclusion that there was negligence on the part of both Mrs. Stack and Menard's. Ms. Walker includes no facts about the incident or her investigation in her letters. As such, the only possible purpose for the Stacks to use Ms. Walker's letters here is as proof that Menard's was negligent in its handling of the seasonal aisle where Mrs. Stack fell. This is classic hearsay for which the Stacks have not asserted, let alone established, any applicable exception. And even if they could be considered, Ms. Walker's letters say

12

nothing specifically as to the condition of the floor in the seasonal aisle adding nothing to the causation analysis. Therefore, Ms. Walker's must be disregarded.

### 4. Professional Engineer Letter

Attached to the Stacks' Response and Notarized Affidavit in opposition to summary judgment is a one-page letter from H. Richard Hicks, P.E. dated April 23, 2019. The Notarized Affidavit cites Mr. Hicks's letter in reference to the Stacks' statement that a warning pylon was placed in an aisle adjacent to the seasonal aisle where Mrs. Stack fell within 24 hours after her fall. While it is unclear whether Mr. Hicks was retained as a Rule 26(a)(2) expert or merely as an investigator by the Stacks' former attorney, Mr. Hicks's letter reports that he reviewed materials related to Mrs. Stack's fall provided by the attorney.

Mr. Hicks's brief letter reaches the following four conclusions:

> The temporary flooring had been placed over regular tile floor in Christmas display aisles. While the temporary flooring provided a different colored floor surface in the Christmas display aisles, it would not seem that it served any necessary function.
>
> . . . . There are edge/transition pieces available that might reduce the possibility of tripping on the edge [of the temporary flooring].
>
> Anything in a pedestrian area and that can restrict or interfere with the movement of pedestrian's foot is a trip hazard. . . .
>
> It is my understanding that no warning cone was provided until after Mrs. Stack's fall.

[DE 48-1 at 37]. Mr. Stack underlined these portions of Mr. Hicks's letter but the Stacks did not discuss the letter or its conclusions directly in their Response, Notarized Affidavit, or Statement of Material Facts in Dispute. Instead, Mr. Hicks's letter was cited

13

in the Notarized Affidavit as support for the Stacks' statements about Mrs. Stack's comment at the time of the fall that she tripped over something; the benefit of transition strips to deter tripping; and the placement of a warning pylon in an adjacent aisle within 24 hours after Mrs. Stack's fall. [*Id.* at 1–2]. Construing the Stacks' filing liberally because they are not represented by counsel in this matter, the Court infers that these are the points for which the Stacks want the Court to consider Mr. Hicks's letter. *See Loubser v. U.S.*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Yet the four conclusions Mr. Hicks reports in his letter include no specific facts connecting Mrs. Stack's fall to the flooring concerns he identifies. The letter seems instead to be giving an attorney information about the flooring generally, which might have served as a guide for the attorney's discovery efforts, but says absolutely nothing specific to the time of Mrs. Stack's fall. Thus, Mr. Hicks's letter is not relevant to the element of causation necessary for success on Mrs. Stack's negligence claim.

The subsequent placement of the warning pylon in an aisle adjacent to where Mrs. Stack fell is also irrelevant for another reason. Federal Rule of Evidence 407 prohibits admission of evidence of post-event measures that, if taken, would have reduced the likelihood of the event at issue for the purpose of establishing negligence or culpability for the event at issue. *See, e.g.*, *Traylor v. Husqvarna Motor*, 988 F.2d 729, 733 (7th Cir. 1993); *Wanke v. Lynn's Transp. Corp.*, 836 F. Supp. 587, 595 (S.D. Ind. 1993). Evidence of a subsequent remedial measure may be admitted for other purposes, such

14

as impeachment, ownership, control, or feasibility of the measure, if contested. Fed. R. Evid. 407.

The Stacks' purpose in noting the subsequent placement of a warning pylon near the site of Mrs. Stack's fall is not evident from their Response. In their Notarized Affidavit, the Stacks state with emphasis:

> **It is important to note here that upon returning to the Christmas Display area of the store for photos, James Stack discovered that a "warning pylon" had, somewhere within the 24 hour period since the trip-fall incident, been placed in the area—however, in the aisle adjacent to where Leona had suffered her injuries, names the wrong aisle.**

[DE 48-1 at 2 (emphasis in original)]. Without more explanation, the Court cannot discern the Stacks' intended purpose for this evidence. In addition, it is well established that the court need not dig through the record looking for a party's undeveloped argument. *See Alexander v. City of S. Bend*, 433 F.3d 550, 552 (7th Cir. 2006).

Regardless of the Stacks' intended purpose for the pylon evidence, post-event remedial measures—like the subsequent placement of a warning pylon in the vicinity of a fall—cannot be used to prove negligence. Therefore, Mr. Hicks's comment about the warning pylon does not create a genuine dispute of material fact as to what caused Mrs. Stack's fall or any potential negligence of culpability on Menard's part.

### 5. Other Evidence

The Stacks also attached other evidence to its Response as exhibits, including excerpts from the Stacks' responses to Menard's interrogatories [DE 48-1 at 3–4, 7–8, 18]. a December 2019 letter and attachments from the Stacks to Menard's counsel [*Id.* at 26–

27]; Menard's responses to the Stacks' interrogatories [*Id.* at 28–36]; a Statement of Material Facts in Dispute [*Id.* at 46–48]. Any arguments intended by these exhibits that were not discussed in the Court's analysis above are not evident from the Stacks' filings. As a result, those undeveloped arguments are waived. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017)

### 6. Conclusion on Negligence

The record before the Court lacks any specific evidence of the conditions of the Menard's seasonal aisle before or at the time of Mrs. Stack's fall. As a result, no genuine dispute of material fact as to the causation element necessary for success on any negligence claim has been established. *See Taylor v. Cmty. Hosps. of Ind., Inc.*, 949 N.E.2d 361, 366 (Ind. Ct. App. 2011) (stating that negligence cannot be inferred from the mere fact of a fall and finding that the plaintiff failed to create a genuine issue of fact where she neither saw nor felt anything on floor in the moments prior to or immediately after her fall). Accordingly, Menard's is entitled to judgment as a matter of law on Mrs. Stack's negligence claims that Menard's failed to maintain the premises and warn her of a hazardous condition. Thus, the Court must grant Menard's instant motion for summary judgment as to Mrs. Stack's negligence claims.

### D. Mr. Stack's Loss of Consortium Claim (Count II)

Having adjudicated Mrs. Stack's negligence claims on the merits and having found that summary judgment in favor of Menard's was warranted on those claims, Mr. Stack's loss of consortium claim is precluded. *See Bender v. Peay*, 433 N.E.2d 788, 790

(Ind. Ct. App. 1982). Therefore, Menard's is also entitled to summary judgment on Mr. Stack's loss of consortium claim.

### III. PLAINTIFFS' MOTION FOR RELIEF FROM COST OF MEDIATION [DE 43]

Aside from Menard's motion for summary judgment, the Court must also consider Plaintiffs' tangential Motion for Relief from Cost of Mediation, which they filed on July 8, 2020. The parties mediated this case with Michael Scopelitis on July 3, 2020. In preparation for the mediation, the parties and Mr. Scopelitis entered an agreement—signed by the Stacks on June 26, 2020—which allocated the cost of mediation as follows:

> My fee is $275.00 per hour, which cost the parties agree to pay equally. The parties may at the end of the mediation alter the proportions which they will pay hereunder. Any out of pocket expenses will also be billed to the party for whom or by whom such costs were incurred. I reserve the right to invoice on a monthly basis with the understanding that statement for services rendered will be paid within a reasonable time.

[DE 47-1 at 1, ¶ 1]. The Stacks now argue that Menard's sabotaged the mediation by filing its motion for summary judgment the day before the mediation. Moreover, the Stacks contend that Menard's did not mediate in good faith citing the motion for summary judgment as well as Menard's decision to end the mediation session after about ninety minutes. As such, the Stacks do not want to pay their portion of the mediation costs.

The Stacks' arguments here are misplaced. Menard's participated in the mediation as this Court encouraged. [*See* DE 13 at 2]. Menard's followed the order of this Court to have a representative with sufficient settlement authority attend the

mediation. [*See* DE 13 at 2]. Menard's was completely within its right to advance its own interests at every stage of negotiation inherent in any mediation. In fact, the Stacks similarly advocated their own interests during the mediation by rejecting Menard's settlement offers. Moreover, mediation and litigation—even dispositive motions such as motions for summary judgment—typically run parallel to each other. The Stacks present no authority that would require Menard's to forego a motion for summary judgment until after completion of mediation.

Therefore, the Stacks have presented no evidence of bad faith conduct during the mediation of this case before Mr. Scopelitis on July 3, 2020. The Stacks have also failed to offer any authority for why they should be excused from the contractual obligations they accepted when they entered the mediation agreement with Mr. Scopelitis and Menard's. Accordingly, the Stacks motion for relief from mediation costs is denied.

### III. CONCLUSION

For the reasons discussed above, the Court

(1) **GRANTS** Menard's Motion to Strike the Stacks' surreply [DE 52];

(2) **DENIES** the Stacks' Motion for Relief from Mediation Costs [DE 43]; and

(3) **GRANTS** Menard's Motion for Summary Judgment [DE 39].

(4) **STRIKES** the Stacks' surreply [DE 50].

(5) **ORDERS** the Stacks to comply with the terms of their Mediation Agreement with Michael Scopelitis and Menard's promptly.

Finally, the Clerk is **DIRECTED** to enter judgment on all claims in favor of Menard's.

**SO ORDERED** this 25th day of March 2021.

                                                               <u>s/Michael G. Gotsch, Sr.</u>
                                                               Michael G. Gotsch, Sr.
                                                               United States Magistrate Judge